Racer and others were joined as defendants.    After that time he can not. make the claim as to the unpaid purchase money, that he is entitled to be protected as a bona fide purchaser without notice. While he was the absolute owner of the account, yet he was chargeable with notice of plaintiff's claim that the transfer was made by said John W. Racer with intent to defraud creditors, and that he was entitled to subject said claim to the payment of his judgment, and therefore any payments thereafter made by him were at his peril.    To constitute a bona fide purchaser without notice there must be want of notice both at the time of purchase and at the time of payment    Blanchard v. Tyler et al., 12 Mich., 338.

In equity a bona fide purchaser is protected to the extent of the payments actually made, and no further.    The rule applies even where further payments are provided for, unless they are secured in such a manner that the purchaser cannot be relieved against them.    Dixon v. Hill, 4 Mich., 404; Kerr on Fraud and Mistake, 318, 319; 2 Pomeroy's Equity Jurisprudence, sections 691, 750, 751; Keyser v. Angle, 40 N. J. Eq., 481; Bump on Fraudulent Conveyance, 233, 477; Bush v. Collins, 35 Kansas, 535; Wormley v. Wormly, 8 Wheaton, 421; Jewett v. Palmer, 7 Johns. Chan., 65.

To the extent of the purchase money unpaid at the time of the service of summons, the said James Racer is not entitled to protection, and the executors of the estate of said Milton Todhunter, deceased, who are withholding payment of the claim subject to the order of this court, are directed to pay to the clerk of this court said sum of $179.00, to be applied upon plaintiff's said judgment.

M. J Hartley, for plaintiff.

Little & Spencer, for defendants.

---

(Lucas County Court of Common Pleas.)

THE TOLEDO BENDING CO. v. THE MANUFACTURERS' RAILWAY CO.

---

*Right of abutting lot-owner in street in front of his premises.*—Where the city council grants by ordinance to a railroad company the right to lay its tracks over a street, the construction of such tracks will be enjoined at the suit of an abutting property owner, whose consent has not been obtained, where it appears that the construction and operation of such railroad would substantially interfere with his rights and easements in the street, and damage his property and building. until such railroad company shall have fully compensated such abutting property owner.

*Material or substantial injury, what degree of proof required.*—The question whether the damage to the abutting property would be material or substantial, will be determined by the usual rules and upon a preponderance of all the evidence.

*Benefits as offset to Injury.*—Under the provisions of our constitution and the decisions of our courts, the court is not justified to set off general benefits against special damages.

*What to be anticipated in determining injury.*—Only the consequences which would naturally arise from a proper construction or operation of the railroad to be considered by the court.

*Extent of injunction.*—The court considers the question to what extent the construction of the railroad should be enjoined in such a suit.

*Mandatory injunction.*—Where a railroad company, under an ordinance of the city granting the right to lay its tracks in a certain street, proceeds without having first obtained the consent of abutting property owners to tear up the street to construct its road, a mandatory injunction will be granted on the suit of an abutting property owner whose property will be damaged by such construction, ordering the railroad company to restore the street to its former condition in front of the property of such abutting owner.

(Decided May 25, 1895.)

---

PRATT, J.

The petition of The Toledo Bending Company v. The Manufacturers' Railway Company was filed in this court on the 15th day of April, 1895,

and sets forth the ownership by the plaintiff of certain real estate in the city of Toledo, fronting on Water street 165 feet, and also having a frontage on Olive street on one side and Elm street on the other, each crossing Water street, and on which they had constructed and in operation the wood working manufactory fronting upon and constructed with reference to the Water street frontage. It charges that the defendant company, claiming under a certain ordinance of this city a right to construct, maintain and operate a steam railroad along said Water street, commencing a the center line of Olive street, and passing in front of plaintiffs' premises and extending along Water street to Locus street, is proceeding to build said railroad; and that the construction and operation of the road would interfere with the private rights and easements of the plaintiff in the street and greatly damage its property and building; that the railroad company has not obtained consent of the plaintiffs for the construction of the road, nor acquired any rights by any proceedings in court. This is substantially the first cause of action.

And by a second cause of action it is alleged that the defendant company has not complied with the terms of the ordinance, by filing its acceptance of the grant, and the bond required by the ordinance.

And by a third cause of action it alleges that said ordinance was not duly and legally passed by the common council.

To this the defendant filed its answer, in which it sets up in full the ordinance under which it claims, and alleges that it was duly passed, and denies that the construction or operation of the road would cause any injury to the plaintiff's rights.

For answer to the second cause of action, it alleges that it did file—as required by the ordinance—its acceptance and bond; and for answer to the third cause of action, sets up in detail the proceedings of the council in the passage of the ordinance.

The case has been tried upon the merits and upon the issues thus made, and is now to be decided by the court.

It is important, before considering the evidence in the case, to consider certain law questions under which this evidence is to be considered.

I.    The Private Right of an Abutting Lot Owner in the Public Street in Front of His Premises.

It is not necessary to quote from or review at length the constitutional provisions in this state. Section 19 of the Bill of Rights, and section 5, article XIII require that when private property is taken for right of way or other public use, full compensation shall first be made to the owner in money, irrespective of any benefits resulting from the improvement, and the amount shall be ascertained by a jury of twelve men.

The first question presented here is, what rights if any, has the plaintiff, as the owner of the lots or lands abutting upon the streets here in question, which come within the designation of private property, and are thereby protected by these constitutional provisions?

It is not necessary in considering this question to go back of the decisions made under our present constitution. The Supreme Court, in the case of Crawford v. Delaware, 7 Ohio St., after the oft-quoted statement as to the respective rights of the public and the lot owners, found on page 469, says: "This easement appendent to the lots, unlike any right of one lot owner in the lot of another, is as much property as the lot itself." And, at the bottom of page 470 and the top of page 471, after referring to the effect of cutting down the street by change of grade, so as to prevent access to the street, and, referring to the damage thus occasioned, says: "It is as positive and substantial an injury to private property, and as direct

an invasion of private right incident to a lot as if the erections upon the lot were taken for public use. It comes not within the letter but manifestly within the spirit of the provisions of the constitution which requires compensation for property taken for public use."

In the Cumminsville case, in 14 Ohio St., Judge Ranney, after stating in his clear and masterly manner, the distinctions between public and private rights in the streets, says (page 549): "But where these new structures, and new modes of travel, devolve additional burdens upon the land, and materially impair the incidental rights of the owner in the highway, they require more than the public has, or can grant, and the deficiency can only be supplied by appropriating the private right, upon the terms of the constitution."

Hatch v. R. R. Co., 18 Ohio St., pp. 122 and 123, as also many other cases decided before and since, recognizes the same principle, and the case of R. R. Co., v. Williams, 35 Ohio St. 168-172, is directly in point. That case has been criticized by counsel in the arguments here, but is based upon the Cumminsville case, and, in the course of the opinion, referring to the interest of the property owner in the highway, on page 172, the court says: "This was her property within the meaning of the constitution, subject only to the easement of the public therein. * * * The railroad company, by occupying the highway, constructing its track and operating its trains thereon by steam motive power, completely diverted the highway from the uses and purposes for which it was established." Adding that this imposes new burdens on the land which could only be acquired by consent or appropriation. And this doctrine has been affirmed in too many decisions of our Supreme Court to warrant citation even of the titles of the cases, the last of these decisions which I have found being that of Daly v. The State, decided in May last, and reported in volume 32 of the Bulletin, page 90 et seq., and in which the language extracted from the opinion of Judge Gilmore in the above case was cited as stating the correct rules of the law in this state. The case the nearest like the one now under consideration in its facts is that of the Ry. Co. v. Lawrence, 38 Ohio St. 41, and this case seems to me to have been decided upon the principles laid down in the cases which I have already referred to. The position taken by counsel for the railway company in that case is stated at the commencement of their argument, as is shown in the report of the case on page 42, as follows: "The first and principal question presented, is this: Under our constitution and laws, where the city council of a city has granted to a steam railroad company the right of way for its track through a public street of such city regularly dedicated to public use by the original proprietor, has the abutting lot owner such property rights in the street as to entitle him, necessarily and as a matter of law, to condemnation proceedings, or is his remedy one for damages for any consequential injury he may sustain? We maintain that the abutting lot owner has no right to condemnation proceedings under such circumstances."

And without further quoting, the arguments made by counsel in that case are in the same line as those made here by counsel for this defendant in this case; and the court, by White, J., met this argument by the quotation made from the Delaware case, citing that as the established doctrine in this state, and referring to this easement, and italicizing the closing clause, "is as much property as the lot itself." Without extending this opinion upon this point by further citation or comment, I think I am required to, and do, find as principles applicable to the facts in this case—

(a) That whatever interest the plaintiff has in the streets in front of its property as appendant to its abutting lots, is as much property as the abutting lots.

(b)  That it necessarily follows that such interest, if any it has, is within the protection of the constitution, and cannot be taken by the defendant company as right of way for its railroad, except upon full compensation being first made, such compensation (in the absence of consent) to be determined by a jury, irrespective of any benefits resulting to the property by reason of the building of the road.

II.  The Proofs Required of the Lot-owner to Establish this Right of Private Property, and Entitle Him to Injunction.

The first clause in the syllabus of the Lawrence case, 38 Ohio St., is as follows: "Where the construction of a railroad in a street of a city will work material injury to the abutting property, such construction may be enjoined, at the suit of the owners, until the right to construct such road in the street shall first be acquired under proceedings instituted against such owners as required by law for the appropriation of private property."

And on page 44 the court says, in reference to this point: "As to the claim of the plaintiff in error that the abutting lot owners will sustain no appreciable damage by the construction of the railroad on the street.  This question was put in issue by the pleadings, and was found by the court below in favor of the defendants in error.  All the evidence is embodied in the bill of exceptions, and is brought before us for review.  The result of our examination is, that we see no reason to warrant us in disturbing the findings of the court upon the issues of fact."

And this is all that is said upon that point, none of the evidence embodied in the bill of exceptions being given, so as to throw any further light upon the method in which this question of material injury was arrived at, or to show what was the form of questions asked or of the testimony given in answer to these questions.

Railway Co. v. Gardner, 45 Ohio St. 309.  In this case we have questions of evidence discussed very fully.  That was, however, neither an injunction nor an appropriation case, but was one brought for damages under section 3283.  In the first clause of the syllabus—referring to the evidence to sustain such an action—it is said:  " *  *  * . it is competent to take into consideration evidence of material injury and loss to the property (not common to the community at large), caused by smoke, noises and sparks of fire, occasioned by running of locomotives and cars along the track in front of the property."

And Owen, C. J., in the course of his opinion, and after stating in substance that the adjudications in this state had settled the law as to the rights of property owners in the street too fully to justify the citation of authorities, uses the words "materially and substantially injured by the location and operation of the railroad track upon the street upon which such property abutted."

I have endeavored, in considering the evidence in this case, to be governed by these two decisions in so far as they seem to furnish a guide to the solution of the questions here made.  One of these points upon which they do not give any special aid is, that in neither of them does there seem to be any point made as to benefits that might result to abutting property by the construction of the road.  It is the question of damages that is being considered in these cases, and I do not find that there was any claim made for resulting benefits, either general or special.

As to the amount of proof necessary to establish "material" or "substantial" injury, counsel in this case differ widely.  The claim on the part of plaintiff's counsel, as I understand it, is substantially that this court is only to find a case of probable injury; while on the part of defendant's counsel it is claimed, that the proof must be clear and conclusive, and the

fact found—not on a mere preponderance of evidence. I cannot fully agree with either of these propositions. I have found no case throwing much light upon the question, unless it is a point made in the Hatch case, where it is claimed that the court had erred in an appropriation proceeding, in excluding testimony as to the improvements in that case being endangered by fire. The Supreme Court held that such exclusion of testimony, under the circumstances of that case, could not be held erroneous, thus recognizing the province of the court in passsing upon and excluding testimony which it considered as too remote. Without further discussion, however, I hold that a court is to be governed, in considering this question, by the usual rules, and that it is to determine and decide upon a preponderance of all the evidence upon the several issues before it; and I further hold that it is to find that the plaintiff's rights or interests have been or will be impaired, or its property injured, not necessarily in any certain or definite sum, but that such injury is or will be "material" or "substantial," and not in a merely nominal amount.

III.   What, if any, Benefits that may Result to this Property by the Construction and Operation of this Railroad, should be Taken into Consideration in this Case?

The plaintiff was permitted to give in evidence in detail the location and construction of its manufactory and the manner of its use. The testimony upon this point was received and admitted against the objection of defendant's counsel, and subject to further consideration by the court. I quote, by way of illustration, a few paragraphs from the first page of the stenographer's report of the testimony of Mr. Foster:

"Q. Are you acquainted with the entire operation of that factory and its daily uses? A. I think I am.

"Q. Are you acquainted with the line of railroad that is contemplated to be put into Water street in front of these premises? A. Yes, sir.

"Q Are you able to state to the court in what manner the making of that improvement, or the construction of that railroad—how it will any way affect the ingress or egress to that property—are you able to state that? A. I think I am; yes, sir.

"Q. Will you state it to the court? (Objected to by defendant; overruled; exception taken.)

"Q. You may answer the question. A. I think I can answer it a great deal shorter from this map—without so many questions being asked. Shall I answer in connection with the construction of the building?

"Q. Yes; taking into account the manner in which the building is constructed upon the land upon which the factory is located."

In answer to this last and other similar questions, Mr. Foster goes in to full detail in describing the property and its uses. Other witnesses were also produced by the plaintiff in the same line, and, by consent of attorneys, I myself viewed the premises and have gone through the building from the entrance on Water street, described by the witnesses, to the point of delivery of the manufactured material.

Defendant, on its part, examined Mr. Backus and Mr. Russell, and numerous other witnesses, in the line shown by the following brief quotations. From Mr. Backus' testimony, page 1:

"Q. You may state what, in your opinion, will be the effect upon the property of the plaintiff of the construction of this railroad in accordance with the terms of this ordinance. A. I should think it would be very largely beneficial; that is, the effect I expect it to have upon my property.

"Q. Now, will you tell us how it will benefit—in what respect? A. Well, a manufacturing business would certainly be carried on to a greater

profit and greater facilities—now growing more and more so every year—than it can by man or horse power; and that is the object I have had in seeking to get that road up Water street, was for the real facilities, and therefore I claim that all the locality will be benefited.

"Q. And, in your opinion, how will it affect the operation of the business of the plaintiff by having the railroad located there? A. I should think it would very largely decrease the expense of doing their business—running the cars and material right at the door, instead of hauling it two or three miles across the town. And in addition to that, the putting of this street in a better condition than it is at the present time."

And Mr. Russell's testimony, page 2:

"Q. What effect on the value of Toledo Bending Co's property would the construction of this road, in the manner contemplated, have? A. I am unable to see why it would not benefit it, just the same as it will benefit us, or any one else.

"Q. What effect would it have upon the value of the property, in your judgment? A. I think it would enhance the value of the property by reason of making it more available for general manufacturing purposes, or for some other line of business, in case they should abandon manufacture."

All this testimony was received subject to objection of plaintiff's counsel, and the consideration of the same was reserved by the court.

The principal argument of defendant's counsel is devoted to the support of this line of testimony. Mr. Kinney's proposition, as I have taken it in my notes, is stated substantially as follows: "Will the market value of the property be depreciated? That is the test, and the only test." It is claimed that in appropriation proceedings that would be the question, and the only question. It is conceded that an abutting property owner has a right and interest in the street appurtenant to his lot and independent of the public right. Also, that the city could grant to the railroad company the right to construct this road over and along the street only in such manner as would not place increased burdens upon the public easement.

Considering the decisions in the Delaware and other cases already discussed, which hold that an appurtenant right in the street is a private property, and under the protection of the constitution, I hold that this claim of counsel cannot be sustained. Counsel has omitted as a test the constitutional right of protection of the plaintiff's easement in the street; has wholly disregarded it in the question, and it is entirely ignored in the opinions of witnesses given. The logical result of following out the proposition, the questions and the opinions of witnesses would be a disregard of the right of the plaintiff to be paid for this private property, irrespective of benefits, and also to wholly disregard the distinction between general and special benefits. The question is contested between counsel for plaintiff and defendant whether the construction of a steam locomotive railroad upon a public street is, per se, a diversion of the use of the street from its original purposes. Counsel for defendant claims that the Cumminsville case, and also the Simmons case, decided by our circuit court, hold that the use of the street by a street railway is not such a taking of private property; and he further claims that the rules applicable to street railways should also be applied to steam railways. In discussing the case in 35 Ohio St., it is claimed that the remarks of the court on page 171 were only a dictum of the court, and not binding upon this court. There seems to be force in this claim, from the rule as stated in 38 Ohio St., requiring a showing of material injury to entitle the lot owner to an injunction as against a steam locomotive railroad.

On the other hand, our courts have repeatedly recognized distinctions

between steam locomotive and horse car or other street railroads. A distinction is also made in the statutes, one class of statutes applying to the one and another to the other kind of said railroads. The principle upon which the construction of street railways is supported in the Cumminsville case is, that it is but another form of facilitating travel and transportation upon the street, and Judge Ranney, in comparing a street railroad with a toll plankroad or turnpike company, says on page 545: "The use of such highway for the purpose of a street railroad, involves the application of new appliances and modes of travel, rather than of any new principle. In both, a corporation is employed and invested with right as in the highway; in both, an expenditure of money is required to put the road in a condition for use and to keep it in repair; but in both, the great leading object and public benefit is the accommodation of travelers, who may have occasion to use them at fixed tolls or rates of fare, and not the profit of the proprietors—'the profit of the proprietors being a mere mode of compensating them for their outlay of capital in providing and keeping up this public easement.' "

Further on down the page, he says: "So far as the carrying of passengers by this mode is concerned, it differs in nothing from the exercise of the common right of carrying them by coaches or omnibuses; and everything needing a grant, or the further authority of law, is the right to place and maintain in the highway, the necessary conveniences for this new description of carriages.

Not to dwell further upon the decisions of our state upon this point, I hold that while it may not be correct—as claimed by counsel for plaintiff—that the construction and operation of a steam locomotive railroad in a street is, per se, such a diversion of the ordinary use of the street as entitles an abutting lot owner to an injunction, yet that is a very important element to be considered in determining whether there has been or will be, by the construction of a railroad in the street, a diversion from such use or an additional burden upon the public easement.

Counsel have cited cases from Pennsylvania and Massachusetts in support of their position, but they do not seem to me to be in point here, for the reason that our present constitution differs very materially from the constitution of either of those states. They are substantially like our old constitution, omitting the important safeguards thrown by our present constitution around the taking of private property. A case is also cited form Kansas, and the Kansas constitution is substantially the same as ours; but it seems to me that the opinion of the court in the case cited, agrees substantially with the decision of our courts. I refer without quoting, to pages 293 and 294 of the case cited. (27 Ks.)

Counsel have based a further argument upon the rules applying to assessment cases for damages sustained by property by change of grade. Special reference is made to the cases of Freeman v. Hunter and Earl v. Hunter, decided by our circuit court, and reported in 7 C. C. R. But the court in those cases recognizes the right of abutting property owners in the street as being property, citing the leading cases in the supreme court upon that subject—and that its value must be assessed under the constitution, by a jury. The court cites the Ball case in 5 O. S., which is a strong case, sustaining not only the right to compensation for property taken, but also for damages to property not taken, and holding that these latter damages must also be assessed by a jury. I cannot see how the further arguments adduced from the assessment cases aid us in determining any question made here. I myself do not doubt that every foot of property or every improvement upon this or any other street may each be specially

damaged or specially benefited by an improvement on the street; but I do not see how this affects the question whether this street will be diverted from its original uses or have additional burdens cast upon it, or whether this property in question, would be specially benefited or injured. Neither do I know of anything in any of those cases which would justify the setting off of *general* benefits against *special* damages, or a failure to discriminate between general and special benefits.

IV.  What Action of the Company Under this Ordinance is to be Anticipated or now Considered by this Court?

I agree with counsel for defendant that we are not to anticipate or consider the effect of any possible or probable negligent conduct on the part of the company in constructing or operating this railroad; for such negligence, causing loss or injury, a new cause for action would arise in favor of the party injured.  I do not, however, agree with counsel in the position that we aie only to consider those injuries which will necessarily arrise form a proper construction or operation of the road.  I do hold that we are to consider the consequences which would naturally arise from the proper and full exercise by the defendant company of any and all the rights granted under the ordinance in question.  For such an exercise of any of these rights—either in the construction or operation of its road— no new or further cause of action would accrue to the plaintiff.  We are therefore, in examining the evidence in this case, to look to all the surrounding circumstances, the charter of the road proposed to be constructed, the purposes for which it is intended to be operated, and the conditions, rights and limitations under which it is, by the terms of the ordinance, when so considered, to be constructed and operated.

V.  The Rights Granted the Defendant Company under this Ordinance, and the Limitations upon such Grant.

(a)  The affirmative right is granted to the company to construct and operate in and along Water street, from the central line of Olive street to the northeasterly line of Elm street, "a single track, suited to the standard gauge railroad, with the necessary spurs, curves, sidetrack and switches."

(b)  The only provisions in reference to the part of Water street upon which the company may so construct or operate is that the main or principal track should be in the center of the street, and the other tracks shall be located by resolution of the city council, and the tracks shall be so constructed as not necessarily to interfere with public travel.

(c)  The only limitation as to the number of tracks is, that there shall not be more than one sidetrack on each side of the street, and the further limitation implied in the word necessary, as used in reference to the sidetracks, spurs, and switches.  And this term, "necessary," is used in reference to the interests of the company as they may develop during the term of its grant, and not to the interests and convenience or for the benefit of any property owner or other person.

(d)  The only limitations as to the use of these tracks by the company in operating its road are, that they shall be so maintained as not to unnecessarily obstruct public travel; that cars shall not be run or stored on any of the tracks between 6 a. m. and 6 p. m. of any day, and that during that time they must be kept free from cars between the curb lines.  Other provisions are, that cars or engines are not to be allowed to stand over five minutes at street crossings, or an unreasonable length of time, after being loaded or unloaded.  These last provisions apply to any time; those in reference to the running of cars do not apply to the time between 6 p. m. and 6 a. m.

It is claimed by the counsel for plaintiff, that the grant to the company gives them no right to occupy, and that the abutting property owners have no right to authorize the company to occupy the sidewalk for any of the purposes of the company. I cannot agree with this view. The part of the street set aside by the ordinance for use of the sidewalk is not excluded from the grant, either directly or by inference. A general ordinance is introduced setting apart a certain portion of all streets for sidewalks in proportion to the width of the street, and also another general ordinance prohibiting obstructions of the sidewalk; but this ordinance is a specific grant made subsequent to the general ordinances, and the question as to the effect of such a grant as against the ordinance was directly decided by our circuit court in the Simmons taxpayer case, 5 C. C. R., 133, where the court said, "the council which passes the conflicting ordinance is of equal authority to the one passing the general ordinance, and the last act of the legislative will, when formulated with the requisites provided by law, must govern."

I am therefore of the opinion that whenever the necessities of the company may require, it may construct its sidetracks, spurs, or switches in any part of the street, sidewalk included, subject only to the right of the city as to their location, and the court will presume that the city council will make the location in accordance with its necessities.

### VI. The Evidence in the Case Considered.

All will agree that the evidence is to be considered in connection not only with the rights granted, but with reference to the general scope and purpose of the construction and operation of the proposed road and all the circumstances surrounding the case. The court has heard a large amount of testimony given by the witnesses, heard their opinions, and, what is of far more importance, their statements of facts from which opinions are to be deducted; and has also had the opportunity at two different times during the trial and argument, to view and examine the premises. One of the most instructive items of evidence that has been placed before me is the map presented by Mr. Wickenden, taken together with the testimony of Messrs. Wickenden and Mills, in connection with this map. I take this map and the evidence of these witnesses in connection with our common knowledge and observation of the methods in which railroad cars, in locations such as here indicated, and for the purpose here proposed, are handled and used.

It is argued by counsel for defendant on this testimony that there would be no necessity for placing sidetracks, curves, or switches in front of the plaintiff's property, and that they would not be so placed unless it were done at the request and for the use of the plaintiff. This does not seem to me to be the effect of the testimony of these witnesses. Cars are to be run in upon this property in the night season; they are not to be allowed to stand between the curb lines of the street at any time during the day; there will then be a plain necessity for the placing of the cars as they are run in either upon the sidewalk, or of running them in upon the property of the owner. To get in upon a sidewalk by a switch from the center track so as to come upon the straight track upon the sidewalk, requires, according to the testimony of these witnesses, a distance of 114 feet between the point where the switch starts from the center line and the one where it reaches the straight track upon the sidewalk. The average length of freight cars, as testified to by Mr. Mills, is thirty-five feet, the length varying however, from thirty to forty-two feet. Therefore to get a single car in front of the Finley Brewing Co. upon the sidewalk where it can stand in on a straight track, will require the starting point

to be at least 149 feet from the end of the car. The whole width of Elm street is eighty-two and one-half feet, so that in order to get a single car in front of the Finley Brewing Co. at its nearest point to Elm street, will require that the switch-point be thirty-one and one-half feet in front of the plaintiff's property, and from there it must cross the entire width of Elm street between the plaintiff's and the Brewing company's property; and there will be no way of avoiding this, and making the sidetrack connections with the Finley Brewing Co. without occupying nearly the entire front of the Brewing Co.'s property, and then placing a single car near the corner of said property.

But it is, in my judgment, folly to suppose that the company could carry on the proposed business and so restrict itself in the construction of its road. A sidetrack sufficient only to hold a single car and making connections at one end only with the main track, would not furnish such accommodations as are necessary in such a business. Again, there must be during the time cars are being run in and placed upon the different switches for different purposes, the passing and repassing in and out, of the cars being switched. The business could not be done on a single track, nor could it be done by simply making a system of switches or spurs and connecting either at one or both ends with the main track. The only practical way in which the proposed business of the company could be carried on would be by running such tracks either upon one or both sides of its main track, so as to be continuous from one end to the other of the proposed road.

The defendant company would not need to ask the permission of the plaintiff, when it became necessary for its business, to run a switch down upon the easterly or water side of its main track from its connection with the Pennsylvania Co.—when such connections shall be made—directly along Water street to connect with the Finley Brewing Co. property upon that side, the Carriage Wood works or the Vulcan Iron works property beyond. Not only this, but they could, whenever the necessity arose, without consulting the Bending company, run a sidetrack from the same connection, along the side of the main track next to their manufactory.

Plaintiff is entitled to the free and unobstructed use of the entire width of the street, and the grant to the company would give it the right, whenever necessary to do so, to place in front of their property, not only the one central track, but one, or even two side tracks; and, to look at this property and location at the mouth of this railroad, where every car both in and out, must pass, it can be plainly seen that at this point at least, there will be this necessity upon the part of the company to construct or operate either one or both of these sidetracks. It is also evident that at least during the time between 6 p. m. and 6 a. m., when there is no restriction as to the manner of running its cars, that the switch or switches in front of plaintiff's property will, from the necessities of the case, be very largely occupied with the movement of trains and for the standing of cars. In this connection, incidentally, it is proper to remark that the right to the free and unobstructed use of the street by the owners of the abutting property, is not limited to any particular portion of the twenty-four hours comprising the ordinary day.

The location of this property is also to be considered in connection with the special damages or benefits to result from the construction and operation of the road. In the very intelligent opinion given by Mr. Pomeroy, one of defendant's witnesses, while he considered that all the property upon the street would be benefited by the road, he said that in his opinion the property of the plaintiff would receive the least benefit of any

of the property upon the street, unless it were the property of the Pennsylvania Co., immediately opposite. It is equally evident, not only that a greater additional burden would be laid upon this part of the street than upon any other, but that the special damages of the plaintiff would exceed those upon any other part of the street. Mr. Pomeroy testified only with reference to the supposed effect upon the real estate; but the condition and construction of the plaintiff's manufactory must also be taken into consideration. The construction of this factory and the use made of it by the plaintiff has been fully detailed before me in the evidence. This factory has been lawfully constructed with reference to a frontage on Water street, without any railroad, and for a long series of years has been so used by the plaintiff. It is perfectly evident from the testimony, and I also find from simply a cursory examination which I made in going through the factory, that at the present time this manufactory is not constructed for or adapted to the carrying on of its business in connection with a railroad on Water street; and further, that to so change this manufactory as to adapt it to the carrying on of business in connection with such supposed railroad, it will be necessary to very largely remodel—or perhaps substantially reconstruct and rearrange—the entire building. The property of the other owners upon the street, so far as the testimony shows anything in reference to it, or so far as common observation goes, can be much more easily adapted to the proposed new order of things. Mr. Russell certainly shows from his testimony that his business can be much more readily and easily adapted to the railroad than can the property of the plaintiff.

Without, however, further extending this opinion by referring to the many other points and considerations which have been brought forward in evidence and arguments of counsel, I hold:

1. That the construction and operation of the defendant's road, under and in accordance with the grant made in this ordinance, would constitute an additional burden upon this street in front of plaintiff's property, and divert it from its original uses, and would therefore be a taking of the property of the plaintiff, for which it is entitled, under the constitution, without reference to any other remedies that it might have, to be paid in money, irrespective of any benefit from the construction or operation of the road.

2. That the plaintiff's property would thereby be materially injured by the special damages which it would sustain over and above any special benefits which would accrue to it.

3. That the amount of compensation, both for the value of the property of the plaintiff in the street and the special damages to the remainder of its property, must be assessed and determined by a jury of twelve men.

It follows therefore that the plaintiff is entitled to maintain its injunction in this case until defendant shall either have acquired, by consent or purchase, or by appropriation according to law, the right of way in said street.

A question has been made as to the extent of this injunction, whether it should restrain the company from further proceedings with the building of any part of this road, or only restrain it from building the part in front of plaintiff's property. Very little light has been given me upon this subject by the discussion of counsel upon either side, and I do not know of any case where such a point was made or decided. My recollection of the injunction cases brought by different property owners abutting upon the street railroad, is, that the court was asked in each case to en-

join the construction upon all such part of the street as was covered by the grant to the street railroad. No point was ever raised as to this in the discussion. In the Cumminsville case the order was made that the company stand enjoined from the further extension of their track upon the line proposed until they had acquired the interest of two owners of property on the highway. The prayer in this case was that they be enjoined from constructing a railroad in the highway between the two certain streets named. The finding of facts shows that these plaintiffs were the owners of property on the highway between the two streets named. It does not show at what part it was located between those streets. But, as I understand that case, not only the prayer for but the injunction granted covered the entire construction between those streets.

In the absence of any more definite authority upon this point—subject to the further presentation of authorities, if counsel on either side wish to do so—I hold that the injunction must stand, as prayed for in the petition in this case, until the right of way in the street shall be acquired by the defendant company.

### A Mandatory Injunction.

A mandatory injunction is also prayed for by the plaintiff, requiring the defendant to restore the street to the condition in which it was at the time the defendant company entered upon the street.

Under the circumstances of this entry—as to which there is no dispute whatever—I hold the entry to have been unlawful, and that the plaintiff having asserted, at the first moment which process could be issued after this entry, its right in the premises, the defendant cannot have any benefit whatever from the possession which it has acquired, and it is responsible for any injury done to the street; and I therefore grant the mandatory injunction prayed for; this mandatory order, however, to be limited to the part of Water street between the center of Olive street and the southeasterly line of Elm street.

I have not in this opinion adverted at all to the questions made under the second and third causes of complaint named in the petition, and for the reason that under my findings above, it is not necessary to consider, and I have not considered the points made or the authorities cited in reference to those questions.

In reference to the case brought by the Manufacturer's Railway company against the city officials, it is only necessary to say that the decision in the foregoing case also decides this case.

The prayer of the defendant's answer, for affirmative relief, should be granted; the temporary restraining order dissolved, the petition dismissed, and a mandatory injunction will be granted against the plaintiff, ordering it to put said Water street, between the center of Olive street and Locust street, in as good condition as it was before it entered upon the street.

A reasonable time as to both these mandatory injunctions should be granted the railway company to allow it to comply with the order, and this time may be either agreed upon by counsel, or by them submitted to the court, if they cannot agree.

J. K. Hamilton, J. F. Kumler, for Bending Co.

W. H. A. Read, Guy W. Kinney, for Manufacturers' Ry. Co.

C. F. Watts, City Solicitor.